No. 22-305

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

————————

IN RE: E.I. DU PONT DE NEMOURS AND COMPANY
C-8 PERSONAL INJURY LITIGATION

-------------------------------------------

IN RE: 3M COMPANY; DYNEON, LLC; E.I. DU PONT DE NEMOURS AND
COMPANY, CHEMOURS COMPANY; ARCHROMA MANAGEMENT LLC;
ARKEMA, INC.; ARKEMA FRANCE, S.A.; AGC CHEMICALS AMERICAS, INC.;
DAIKIN INDUSTRIES, LTD.; DAIKIN AMERICA, INC.;
SOLVAY SPECIALTY POLYMERS, USA, LLC,

*Petitioners.*

————————

On Appeal from the United States District Court for the Southern
District of Ohio, No. 2:18-cv-01185, Chief Judge Edmund A. Sargus

————————

## BRIEF FOR THE CHAMBER OF COMMERCE OF
## THE UNITED STATES OF AMERICA, THE AMERICAN
## TORT REFORM ASSOCIATION, AND THE NATIONAL
## ASSOCIATION OF MANUFACTURERS AS *AMICI CURIAE*
## IN SUPPORT OF THE PETITION

————————

Andrew R. Varcoe
Jennifer B. Dickey
U.S. CHAMBER
LITIGATION CENTER
1615 H Street NW
Washington, DC 20062

*Counsel for the Chamber of
Commerce of the United
States of America*

Jeffrey S. Bucholtz
Gabriel Krimm
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
jbucholtz@kslaw.com

*Counsel for Amici Curiae*

March 28, 2022          *(Additional counsel listed in inside cover)*

H. Sherman Joyce
Lauren Sheets Jarrell
AMERICAN TORT
REFORM ASSOCIATION
1101 Connecticut Avenue NW
Suite 400
Washington, DC 20036

*Counsel for American*
*Tort Reform Association*

Erica Klenicki
NAM LEGAL CENTER
733 Tenth Street NW
Suite 700
Washington, DC 20001

*Counsel for National*
*Association of Manufacturers*

Val Leppert
KING & SPALDING LLP
1180 Peachtree Street NE
Suite 1600
Atlanta, GA 30309

*Counsel for Amici Curiae*

## CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

*Amici* make the following disclosures under Sixth Circuit Rule 26.1:

**1. Is any *amicus* a subsidiary or affiliate of a publicly owned corporation?**

No. The Chamber of Commerce of the United States of America, the American Tort Reform Association, and the National Association of Manufacturers are nonprofit corporations organized under the laws of the District of Columbia.  No entity has a parent company and none has issued stock.

**2. Is there a publicly owned corporation, not a party to the appeal or an *amicus*, that has a financial interest in the outcome?**

None known.

*/s/ Jeffrey S. Bucholtz*
Jeffrey S. Bucholtz

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ...............................i

TABLE OF AUTHORITIES................................................... iii

INTEREST OF *AMICI CURIAE*.................................................1

INTRODUCTION.................................................................3

ARGUMENT ....................................................................4

I.    The district court is attempting to fund an investigation of PFAS chemicals through an injunction-based class action.............4

II.    Left undisturbed, the certification order will yield disastrous short-term and long-term consequences......................11

CONCLUSION ................................................................15

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)...............................................................................6

*Audi AG v. D'Amato,*
469 F.3d 534 (6th Cir. 2006).............................................................7

*Ball v. Union Carbide Corp.,*
385 F.3d 713 (6th Cir. 2004).............................................................11

*Blue Chip Stamps v. Manor Drug Stores,*
421 U.S. 723 (1975)...............................................................................13

*Davilla v. Enable Midstream Partners L.P.,*
913 F.3d 959 (10th Cir. 2019).............................................................9

*Davis v. Cintas Corp.,*
717 F.3d 476 (6th Cir. 2013).............................................................10

*Gates v. Rohm & Haas Co.,*
655 F.3d 255 (3d Cir. 2011) .............................................................9

*Greenlaw v. United States,*
554 U.S. 237 (2008)...............................................................................8

*Guar. Tr. Co. v. York,*
326 U.S. 99 (1945).................................................................................9

*Hardwick v. 3M Co.,*
No. 2:18-cv-1185,
2022 WL 668339 (S.D. Ohio Mar. 7, 2022)...........................3, 9, 10, 12

*In re St. Jude Med. Inc.,*
522 F.3d 836 (8th Cir. 2008).............................................................11

*In re Tivity Health, Inc.,*
No. 20-0501,
2020 WL 4218743 (6th Cir. July 23, 2020) .........................................3

*Madej v. Maiden,*
  951 F.3d 364 (6th Cir. 2020)............................................................7

*Morrison v. Olson,*
  487 U.S. 654 (1988)......................................................................11

*Olden v. LaFarge Corp.,*
  383 F.3d 495 (6th Cir. 2004)........................................................10

*Romberio v. UnumProvident Corp.,*
  385 F. App'x 423 (6th Cir. 2009)..................................................10

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.,*
  559 U.S. 393 (2010)......................................................................13

*Swiger v. Rosette,*
  989 F.3d 501 (6th Cir. 2021)........................................................14

*United States v. Asakevich,*
  810 F.3d 418 (6th Cir. 2016)..........................................................8

*United States v. Samuels,*
  808 F.2d 1298 (8th Cir. 1987)........................................................8

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011)............................................................*passim*

*Zinser v. Accufix Rsch. Inst., Inc.,*
  253 F.3d 1180 (9th Cir. 2001)........................................................9

**Rules**

Fed. R. Civ. P. 23(b)(2) ..............................................................3, 8

**Other Authorities**

2 Newberg on Class Actions § 4:26 (5th ed.)...............................5

Advisory Comm.'s Notes on Fed. R. Civ. P. 23 .........................13

Brian T. Fitzpatrick,
    *An Empirical Study of Class Action Settlements and Their*
    *Fee Awards*, 7 J. Empirical Legal Stud. 811 (2010) ........................... 13

C-8 Science Panel,
    *Background Information on Lawsuit Settlement*,
    http://www.c8sciencepanel.org/panel_background.html ................... 13

EPA, *PFAS Explained* (Oct. 18, 2021),
    https://www.epa.gov/pfas/pfas-explained ............................................ 3

Michael T. Morley,
    *Nationwide Injunctions, Rule 23(b)(2), and the Remedial*
    *Powers of the Lower Courts*, 97 B.U. L. Rev. 615 (2017) ............... 6, 10

*Per- and Polyfluorinated Substances (PFAS) Factsheet*,
    CDC.gov (Feb. 2, 2022) ..................................................................... 7

*Per- and Polyfluoroalkyl Substances (PFAS) and Your Health*,
    ATSDR.CDC.gov (June 30, 2020) ...................................................... 8

Press Release,
    *EPA Administrator Regan Announces*
    *Comprehensive National Strategy to Confront PFAS*
    *Pollution*, EPA.gov (Oct. 18, 2021) ................................................... 8

## INTEREST OF *AMICI CURIAE*[1]

The Chamber of Commerce of the United States of America is the world's largest business federation.  It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country.

The American Tort Reform Association (ATRA) is a broad-based coalition of businesses, corporations, municipalities, associations, and professional firms that have pooled their resources to promote reform of the civil justice system with the goal of ensuring fairness, balance, and predictability in civil litigation.

The National Association of Manufacturers (NAM) is the largest manufacturing association in the United States, representing small and large manufacturers in every industrial sector and in all 50 states.

The Chamber, ATRA, and NAM regularly file *amicus* briefs in cases that present issues important to their members.  This case is of interest

---

[1] No counsel for a party authored this brief in whole or in part and no entity or person, other than *amici*, their members, or their counsel, made a monetary contribution intended to fund the preparation or submission of this brief.

to *amici* because thousands of businesses across the country, including members of *amici*, are or may become defendants in putative class actions. *Amici* share a vital interest, on behalf of their members and the broader business community, in promoting a predictable, rational, and fair legal environment for these actions. They thus have a keen interest in ensuring that the courts rigorously and consistently analyze whether plaintiffs have properly satisfied all the requirements of Federal Rule of Civil Procedure 23 before certifying a class.

## INTRODUCTION

There is a line between litigation and regulation, and this case blows right past it. The complaint asks for a court order forcing ten separate companies to "provide for and fund" a "Science Panel" that will study potential health risks associated with nearly 5,000 different PFAS chemicals. First Amended Compl. ("Compl."), R.96, PageID#591.[2] In aid of that request, the district court certified this lawsuit as an injunction-based class action, reasoning that the Companies have "acted or refused to act on grounds that apply generally to" nearly every American. Fed. R. Civ. P. 23(b)(2); *see Hardwick v. 3M Co.,* No. 2:18-cv-1185, 2022 WL 668339, at *23 (S.D. Ohio Mar. 7, 2022).

This Court's precedents favor interlocutory review of such an extraordinary order, which raises novel questions, rests on faulty reasoning, and could sound the "death knell" for the defense. *See In re Tivity Health, Inc.*, No. 20-0501, 2020 WL 4218743, at *1 (6th Cir. July 23, 2020). Indeed, the certification order uses an untenable liability

---

[2] The Environmental Protection Agency has recognized the complexity of studying the thousands of widely used Per- and Polyfluoroalkyl Substances collectively known as PFAS. EPA, *PFAS Explained* (Oct. 18, 2021), https://www.epa.gov/pfas/pfas-explained.

theory to justify a massive class action that pushes the limits of Rule 23 and the broader principles of injunctive relief. The Court should grant the petition and decertify the class.

## ARGUMENT

### I. The district court is attempting to fund an investigation of PFAS chemicals through an injunction-based class action.

This is not so much a lawsuit as it is an investigation. Kevin Hardwick is a firefighter from Ohio who says he used various firefighting foams and equipment that contained PFAS materials over his forty-year career. Compl., R.96, PageID#562. He says he now shares one thing in common with 99% of all Americans: he "has one or more PFAS materials in his blood." *Id.*; *see id.* PageID#573–74; Pet. 4.

Hardwick acknowledges that EPA "and other state and local public health agencies and officials" have been studying and regulating PFAS materials for some time. Compl., R.96, PageID#571. In fact, he alleges that regulators have halted the manufacture and use of certain PFAS materials outright. *Id.* Nevertheless, and notwithstanding his own lack of PFAS-related health issues, Hardwick says that more must be done to study and "confirm a causal connection between ... PFAS in human blood and any ... adverse human health impact." *Id.* PageID#577.

4

Hence, this lawsuit. Because no legislature or administrative agency has yet seen fit to conduct all the studies Hardwick deems necessary, he wants a federal court order establishing a "Science Panel" for that purpose. *Id.* PageID#590; *see id.* PageID#577. He wants that panel to "includ[e] but not [be] limited to epidemiologists, toxicologists, medical doctors, and/or exposure-risk assessors," whom he will help select. *Id.* PageID#590. And he wants the panel's work to be funded by the Companies he has sued — a group he deems responsible for "the biopersistence and bioaccumulation of ... PFAS" in the "blood and/or bodies" of practically everyone. *See id.* PageID#563–67, PageID#591.

Hardwick could never justify this extraordinary relief for his personal benefit, so he asked the district court to make his case a class action under Rule 23(b)(2). *See* Motion to Certify Class, R.164. "[D]esigned ... specifically for cases stemming from the civil rights movement," 2 Newberg on Class Actions § 4:26 (5th ed.), "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360–61 (2011). "[C]ases against parties charged with unlawful, class-based discrimination are prime examples," *Amchem*

5

*Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997), and the Rule "is most frequently invoked in litigation concerning civil rights and government benefits," Michael T. Morley, *Nationwide Injunctions, Rule 23(b)(2), and the Remedial Powers of the Lower Courts*, 97 B.U. L. Rev. 615, 634 (2017). Hardwick's invocation of the rule in this "toxic tort" case, and the district court's indulgence of it, are extraordinary for several reasons.

To begin with, Hardwick's theories of liability and relief are circular. *See* Pet. 21–22. He says that the district court must establish the Science Panel because the Companies "refuse to fund or conduct any scientific study ... comprehensive enough ... to confirm a causal connection between ... PFAS in human blood and any ... adverse human health impact." Compl., R.96, PageID#576–77. He says that such relief should follow from proof of liability on his claims of negligence and battery. *See id.* PageID#590. In support of such liability, he alleges that each of the Companies used one or more unspecified PFAS chemicals in a way that "direct[ly] and proximate[ly] cause[d]" him "injur[y]." *Id.* PageID#585; *see id.* PageID#563–67, PageID#587. Yet Hardwick all but admits that he *cannot* make that critical showing of injury, which is precisely why he wants the Companies to pay for a Science Panel to help

6

him figure out whether there is "a causal connection between ... PFAS in human blood and any ... adverse human health impact." *Id.* PageID#577.

No federal court can order such relief, whether to one plaintiff or to one-hundred million. "[A]n injunction is a remedy, not a claim." *Madej v. Maiden*, 951 F.3d 364, 369 (6th Cir. 2020). To get one, Hardwick "must demonstrate that [he] has suffered irreparable injury" at the hands of one or more defendants. *Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006). He cannot lasso the district court's equity powers to force the defendants to help determine whether he has any claims, much less whether millions of absent class members exposed to unknown PFAS chemicals from unknown sources have any claims.

Indeed, the proposed Science Panel would be nothing less than a special investigative committee, more at home in Congress or the Executive Branch than the federal judiciary. *See, e.g.*, *Per- and Polyfluorinated Substances (PFAS) Factsheet*, CDC.gov (Feb. 2, 2022)[3]; Press Release, *EPA Administrator Regan Announces Comprehensive*

---

[3] https://www.cdc.gov/biomonitoring/PFAS_FactSheet.html.

*National Strategy to Confront PFAS Pollution*, EPA.gov (Oct. 18, 2021)[4]; *Per- and Polyfluoroalkyl Substances (PFAS) and Your Health*, ATSDR.CDC.gov (June 30, 2020).[5]  "Article III of the U.S. Constitution empowers federal courts to hear 'Cases' or 'Controversies,' nothing more." *United States v. Asakevich*, 810 F.3d 418, 420 (6th Cir. 2016).  Courts "should not[] sally forth each day looking for wrongs to right." *Greenlaw v. United States*, 554 U.S. 237, 244 (2008) (quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (R. Arnold, J., concurring in denial of reh'g en banc)).  And they certainly should not create a new regulatory agency to further one party's yet-unproven case.

Moreover, even setting aside the incoherence of Hardwick's theory, establishing the requested Science Panel would not constitute granting "final injunctive relief" as required by Rule 23(b)(2).  *Dukes*, 564 U.S. at 365 (quoting Fed. R. Civ. P. 23(b)(2)).  Hardwick himself describes the Panel's work as necessary to support follow-on claims for "personal injury compensation."  *See* Compl., R.96, PageID#577.  And both he and the

---

[4] https://www.epa.gov/newsreleases/epa-administrator-regan-announces-comprehensive-national-strategy-confront-pfas.

[5] https://www.atsdr.cdc.gov/pfas/index.html.

district court view the Panel as an adjunct to some yet-undefined "medical monitoring" program. *Id.*; *see* 2022 WL 668339, at *26. But in neither case would establishment of the Panel provide relief that was in any sense "final." Nor would it be "injunctive," given the Panel's proposed focus on remedying past PFAS exposures, rather than preventing future exposures. *Cf. Dukes*, 564 U.S. at 365 (holding that Rule 23(b)(2) class should not have been certified when "about half the members of the class ... ha[d] no claim" for "prospective relief").

In fact, several courts have already confirmed that relief of this sort is not even "primarily equitable." *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001) (noting "recogni[tion]" among "[m]any courts" that "medical monitoring relief is appropriate only as an element of damages"); *see also Gates v. Rohm & Haas Co.*, 655 F.3d 255, 263 (3d Cir. 2011) ("[W]e question whether the kind of medical monitoring sought here can be certified under Rule 23(b)(2) ...."). That makes sense. Federal courts must decide for themselves how to characterize and wield their remedial powers. *See Davilla v. Enable Midstream Partners L.P.*, 913 F.3d 959, 972–73 (10th Cir. 2019) (citing *Guar. Tr. Co. v. York*, 326 U.S. 99, 105 (1945)). And appropriately construed, the payment of money for

9

medical monitoring is "at best" a "quasi-equitable" form of damages for past harm. *Olden v. LaFarge Corp.*, 383 F.3d 495, 510 (6th Cir. 2004); *see id.* at 510 n.7 (collecting cases).

That problem compounds when one considers the ill-defined nature of Hardwick's "Science Panel" idea. The district court explicitly refused to sketch out the contours of the injunction that it might issue, claiming this was not necessary at the class-certification stage. *See* 2022 WL 668339, at *26. But if the central question governing certification of a Rule 23(b)(2) class is whether a "single injunction ... would provide relief to each member of the class," *Davis v. Cintas Corp.*, 717 F.3d 476, 485–86 (6th Cir. 2013) (quoting *Dukes*, 564 U.S. at 360), the court must at least address *how* the Science Panel would provide relief to each of the millions of absent class members, *see Romberio v. UnumProvident Corp.*, 385 F. App'x 423, 433 (6th Cir. 2009); Pet. 12–13, who will be bound by the final judgment without notice or ability to opt out, *see* Morley, 97 B.U. L. Rev. at 637–39; Pet. 15–17; *cf.* Pet. 9 (discussing the "cohesion requirement").

The answer seems to be that the Science Panel will investigate future claims for damages or medical monitoring, a purpose that Rule

23(b)(2) "does not authorize" for reasons that should be obvious. *Dukes*, 564 U.S. at 360–61. Even in much simpler toxic-tort and product-liability cases, such a request raises "highly individualized" issues. *In re St. Jude Med. Inc.*, 522 F.3d 836, 840 (8th Cir. 2008); *see Ball v. Union Carbide Corp.*, 385 F.3d 713, 728 (6th Cir. 2004); Pet. 10. Those issues are innumerable here, due to the sheer number and diversity of class members, defendants, PFAS chemicals, and potential means and circumstances of exposure. *Cf. Dukes*, 564 U.S. at 362–63 (Rule 23(b)(2) applies where "an indivisible injunction [will] benefit[] all [class] members at once").

This lawsuit is thus an open-ended PFAS investigation, disguised as an ill-pleaded damages suit, masquerading as an injunction-based class action. No matter how Hardwick tries to dress it up, "this wolf comes as a wolf," *Morrison v. Olson*, 487 U.S. 654, 699 (1988) (Scalia, J., dissenting), and it cries out for this Court's scrutiny.

## II. Left undisturbed, the certification order will yield disastrous short-term and long-term consequences.

It is difficult to overstate what might follow from the district court's order. As both a legal and practical matter, this case could fundamentally alter the judiciary's role in our tripartite government

system.  And unless this Court acts now, the monstrous size of the class
and the unlimited scope of potential relief may force the defendants to
settle before this Court ever has a chance to review it.  That is the very
reason Rule 23(f) exists — to preserve the opportunity for judicial review.
It is hard to imagine a case more deserving of it.

Left uncorrected, this certification order will be precedent for
private plaintiffs seeking industry-funded fact-finding on all manner of
potential issues.  Hardwick wants a Science Panel to investigate yet-
unknown health issues associated with PFAS chemicals.  If he can get a
class of millions certified for that purpose, where does judicial power end
and executive authority begin?  Hardwick's mere exposure to PFAS has
countless analogues: nearly every regulated or unregulated industrial
emission;    innumerable    consumer    products,    components,    and
manufacturing materials;  foods and beverages;  drugs and medical
devices — the list goes on.

To be sure, Hardwick's idea draws inspiration from the panel
studying DuPont's C-8 releases in West Virginia.  *See Hardwick*, 2022
WL 668339, at *27.  But that body was established through settlement,
with its focus limited to one specific chemical, a particular plant, and a

single community.  *See* Pet. 19; C-8 Science Panel, *Background Information on Lawsuit Settlement*.[6]  Hardwick proposes a panel without those common-sense limits, to be established without the defendants' consent, in the guise of an "injunction."  *See supra* 5.  This would entail a total breakdown in the line between litigation and regulation, and the certification order is the first step down that road.

Unfortunately, the order could be the last step as well.  Although Hardwick claims to seek only "injunctive" relief, his request could cost the Companies untold billions.  The potential for such "ruinous liability," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 559 U.S. 393, 445 n.3 (2010) (Ginsburg, J., dissenting) (quoting Advisory Comm.'s Notes on Fed. R. Civ. P. 23), will impose hydraulic pressure to settle despite the limited "chance of success" on the merits of Hardwick's ambitious claims.  *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 740 (1975).  That is why virtually all certified class actions "end in settlement" before trial.  Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 812 (2010).  And it is

---

[6] http://www.c8sciencepanel.org/panel_background.html (last visited Mar. 24, 2022).

yet another reason why the Court should grant review now.  *Swiger v. Rosette*, 989 F.3d 501, 504 (6th Cir. 2021); *see* Pet. 17–21.

* * *

The costs of the district court's decision will not be borne by the Companies alone.  They will be borne by customers in the form of higher prices.  They will be borne by employees in the form of lower wages and benefits.  Most importantly, they will be borne by anyone who believes that government investigators and regulators should be accountable agents of the political branches, not unelected judges wielding powers that bear little relationship to the equitable remedies of old.  If ever a case was made for Rule 23(f) review, this is it.

14

# CONCLUSION

The Court should grant the petition and reverse the class-certification order.

Respectfully submitted,

*/s/Jeffrey S. Bucholtz*

Andrew R. Varcoe
Jennifer B. Dickey
U.S. CHAMBER
LITIGATION CENTER
1615 H Street NW
Washington, DC 20062

*Counsel for the Chamber of Commerce of the United States of America*

H. Sherman Joyce
Lauren Sheets Jarrell
AMERICAN TORT
REFORM ASSOCIATION
1101 Connecticut Avenue NW
Suite 400
Washington, DC 20036

*Counsel for American Tort Reform Association*

Erica Klenicki
NAM LEGAL CENTER
733 Tenth Street NW
Suite 700
Washington, DC 20001

*Counsel for National Association of Manufacturers*

March 28, 2022

Jeffrey S. Bucholtz
Gabriel Krimm
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
jbucholtz@kslaw.com

Val Leppert
KING & SPALDING LLP
1180 Peachtree Street NE
Suite 1600
Atlanta, GA 30309

*Counsel for Amici Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 29(a)(5). This brief contains 2,597 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Century Schoolbook font.

Date: March 28, 2022

*/s/ Jeffrey S. Bucholtz*
Jeffrey S. Bucholtz

*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 28, 2022, an electronic copy of the foregoing was filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system.

The undersigned also certifies that service of the foregoing on registered users will be accomplished by the CM/ECF system and by email on the following counsel:

Theodore M. Grossman
JONES DAY
250 Vesey Street
New York, NY 10281
212.326.3939
tgrossman@jonesday.com

Louis A. Chaiten
James R. Saywell
JONES DAY
North Point
901 Lakeside Avenue East
Cleveland, Ohio 44114-1190
(216) 586-3939
lachaiten@jonesday.com
jsaywell@jonesday.com

*Counsel for Daikin America, Inc. and Daikin Industries, Ltd.*

Drew H. Campbell
BRICKER & ECKLER LLP
100 South Third Street
Columbus, Ohio 43215
(614) 227-2300
dcampbell@bricker.com

Jaren Janghorbani
Theodore V. Wells, Jr.
Daniel Toal
Crystal Lohmann Parker
PAUL, WEISS, RIFKIND
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
jjanghorbani@paulweiss.com
twells@paulweiss.com
dtoal@paulweiss.com
cparker@paulweiss.com

*Counsel for Solvay Specialty Polymers USA, LLC*

Ronald S. Kopp
ROETZEL & ANDRESS
222 South Main Street
Suite 400
Akron, OH 44308
(330) 849-6644
rkopp@ralaw.com

Melanie Black Dubis
PARKER POE
PNC Plaza
301 Fayetteville St.
Suite 1400
Raleigh, NC 27601
919.890.4158
melaniedubis@parkerpoe.com

*Counsel for Archroma
Management LLC*

James A. King
PORTER WRIGHT MORRIS &
ARTHUR
41 S. High Street, Suite 2800
Columbus, OH 43215-6194
(614) 227-2000
jking@porterwright.com

Daniel A. Spira
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60613
(312) 853-7274
dspira@sidley.com

Lisa M. Gilford
SIDLEY AUSTIN LLP
555 W. 5th Street
Los Angeles, CA 90013
(213) 896-6044
lgilford@sidley.com

Heidi Levine
Alan E. Rothman
SIDLEY AUSTIN LLP
787 7th Avenue
(212) 839-5300
hlevine@sidley.com
arothman@sidley.com

*Counsel for Arkema, Inc. and
Arkema France, S.A.*

Shawn J. Organ
Erik J. Clark
ORGAN LAW LLP
1330 Dublin Road
Columbus, OH 43215
614.481.0901
sjorgan@organlegal.com
ejclark@organlegal.com

Lanny S. Kurzweil
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
(973) 639-2044
lkurzweil@mccarter.com

Kristofor T. Henning
MCCARTER & ENGLISH, LLP
1600 Market Street, Suite 3900
Philadelphia, PA 19103
215.979.3846
khenning@mccarter.com

*Attorneys for The Chemours Company and E. I. du Pont de Nemours and Co.*

Matthew S. Brown
CARLILE PATCHEN &
MURPHY LLP
366 East Broad Street
Columbus, OH 43215
614.628.0877
mbrown@cpmlaw.com

Peter C. Condron
Clifford J. Zatz
Laura Offenbacher Aradi
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595
202.624.2500
202.628.5116
pcondron@crowell.com
czatz@crowell.com
laradi@crowell.com

*Counsel for AGC Chemicals Americas, Inc.*

Daniel L. Ring
Joshua D. Yount
Michael A. Scodro
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
dring@mayerbrown.com
jyount@mayerbrown.com
mscodro@mayerbrown.com

Andrew J. Pincus
Nicole A. Saharsky
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006
(202) 263-3000
apincus@mayerbrown.com
nsaharsky@mayerbrown.com

Richard D. Schuster
VORYS, SATER, SEYMOUR
AND PEASE LLP
52 East Gay Street, P.O. Box 1108
Columbus, Ohio 43216-1008
(614) 464-6400
rdschuster@vorys.com

*Counsel for 3M Company*

Aaron M. Herzig
Robert Alan Bilott
TAFT, STETTINIUS &
HOLLISTER
425 Walnut Street
Suite 1800
Cincinnati, OH 45202
513-357-9493
aherzig@taftlaw.com
bilott@taftlaw.com

William Earle Braff
TAFT, STETTINIUS &
HOLLISTER
478 Stanley Avenue
Cincinnati, OH 45226
513-293-9787
bbraff@taftlaw.com

David John Butler
TAFT LAW
65 E. State Street
Suite 1000
Columbus, OH 43215
614-221-2838
dbutler@taftlaw.com

*Counsel for Kevin D. Hardwick*

*/s/ Jeffrey S. Bucholtz*
Jeffrey S. Bucholtz

*Counsel for Amici Curiae*